1

2

3

4

5

6

7                              UNITED STATES DISTRICT COURT

                               CENTRAL DISTRICT OF CALIFORNIA
8

9

10    TIMOTHY L.,[1]                              Case No. 5:23-cv-270-MAR

11                         Plaintiff,             MEMORANDUM AND ORDER

12                 v.

13    KILOLO KIJAKAZI,
      Acting Commissioner of Social Security,
14

15                         Defendant.

16

17

18          Plaintiff Timothy L. ("Plaintiff") seeks review of the final decision of the

19    Commissioner of the Social Security Administration ("Commissioner" or "Agency")

20    denying his application for Title XIV Supplemental Security Income ("SSI").  The

21    parties have consented to the jurisdiction of the undersigned United States Magistrate

22    Judge pursuant to 28 U.S.C. § 636(c).  ECF Docket Nos. ("Dkts.") 8–9.

23          For the reasons stated below, the Commissioner's decision is **REVERSED**

24    and this action is **REMANDED** for further proceedings consistent with this

25    Memorandum and Order.

26

27    _____

28    [1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
      recommendation of the Committee on Court Administration and Case Management of the Judicial
      Conference of the United States.

# I.

## PROCEDURAL HISTORY

On January 27, 2021, Plaintiff protectively filed his application for SSI, alleging a disability onset beginning April 10, 2020.  Administrative Record ("AR") at 15, 236–53.  After the application was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Id. at 67, 82, 105–08, 142–44.  On February 15, 2022, an administrative hearing was held before the assigned ALJ in San Bernardino, California.  Id. at 28–52.  Plaintiff, represented by counsel, appeared and testified telephonically.  Id. at 33–47.  A vocational expert also testified telephonically.  Id. at 48–51.  On March 28, 2022, the ALJ issued a decision denying the application.  Id. at 15–27.  Plaintiff filed a request with the Agency's Appeals Council to review the ALJ's decision, which the Council denied on December 29, 2022.  Id. at 1–5, 213–14.

On February 17, 2023, Plaintiff filed the instant action.  Dkt. 1.  This matter is before the Court on Plaintiff's Opening Brief ("Pl's Brief"), filed on May 24, 2023, the Commissioner's Motion for Summary Judgment ("Def's Motion"), filed on June 21, 2023, and Plaintiff's Reply Brief ("Pl's Reply"), filed on July 5, 2023.  Dkts. 12, 15–16.

# II.

## PLAINTIFF'S BACKGROUND

Plaintiff was 40 years old on the alleged disability onset date and 42 years old at the time of the administrative hearing.  AR at 30, 247.  He is single and lives with his two children in a house.  Id. at 33, 237, 248, 304.  He graduated from high school and worked as a maintenance worker and as a manager and/or grill person at fast food restaurants.  Id. at 34–38, 268–69, 287–89, 297.  He last worked in 2017; he stopped working because he was incarcerated or had transportation issues.  Id. at 38–41.  He was involved in a dirt bicycle accident in March 2020.  Id. at 41.  He alleges disability based on: (1) right shoulder surgery complication; (2) broken ankle pain; (3) left hip

1  reconstruction complication; (4) broken left knee pain; (5) stomach issues; (6) high

2  blood pressure; (7) depression; and (8) anxiety.  Id. at 41, 43–44, 46, 265, 296, 336.

### III.

### STANDARD FOR EVALUATING DISABILITY

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him or her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least 12 months.  42 U.S.C. § 423 (d)(1)(a); Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998).  The impairment must render the claimant incapable of performing the work he or she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry.  Ford v. Saul, 950 F.3d 1141, 1148–49 (9th Cir. 2020); 20 C.F.R. § 416.920(a)(1)-(2).  The steps are:

(1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled.  If not, proceed to step four.[2]

(4) Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled.  If not, proceed to step five.

---

[2] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)).  In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

1    (5) Is the claimant able to do any other work?  If not, the claimant is found

2       disabled.  If so, the claimant is found not disabled.

3    See Tackett, 180 F.3d at 1098-99; Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th

4    Cir. 2001); 20 C.F.R. § 416.920(a)(4)(i)-(v); see also 20 C.F.R. 416.920(b)–(g)(1);

5    Woods v. Kijakazi, 32 F.4th 785, 788 n.1 (9th Cir. 2022) (summarizing the steps and

6    noting that "[t]he recent [2017] changes to the Social Security regulations did not

7    affect the familiar 'five-step sequential evaluation process.'").

8       The claimant has the burden of proof at steps one through four, and the

9    Commissioner has the burden of proof at step five.  Ford, 950 F.3d at 1148.  If, at

10   step four, the claimant meets her burden of establishing an inability to perform past

11   work, the Commissioner must show that the claimant can perform some other work

12   that exists in "significant numbers" in the national economy, taking into account the

13   claimant's residual functional capacity ("RFC"), age, education, and work experience.

14   20 C.F.R. § 416.920(g)(1); Tackett, 180 F.3d at 1098–99, 1100; Reddick, 157 F.3d at

15   721.

16                                    **IV.**

17                          **THE ALJ'S DECISION**

18   **A.    STEP ONE**

19       At step one, the ALJ found Plaintiff had not "engaged in substantial gainful

20   activity since January 27, 2021, the application date[.]"  AR at 17.

21   **B.    STEP TWO**

22       At step two, the ALJ found Plaintiff had "the following severe impairments:

23   status post fracture of the right shoulder proximal humerus with fixation hardware;

24   status post open reduction internal fixation (ORIF) of the right ankle; and status post

25   left knee and left hip surgery[.]"  AR at 17.[3]

26

27

28   [3] The ALJ found that Plaintiff's impairment of substance abuse was nonsevere, and that Plaintiff's
     depression and anxiety were not medically determinable impairments.  AR at 17–18.

4

**C.      STEP THREE**

At step three, the ALJ found Plaintiff did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" AR at 18.

**D.      RFC DETERMINATION**

The ALJ found Plaintiff had the RFC to perform light work[4] except:

> [Plaintiff] is limited to lifting or carrying no more than 20 pounds occasionally and 10 pounds frequently; standing or walking for six hours each in an eight-hour workday; and sitting for six hours in an eight hour workday. [Plaintiff] is able to frequently climb ramps and stairs, but is never able to climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. [Plaintiff] is limited to no overheard reaching with the right upper extremity. [Plaintiff] must avoid concentrated exposure to hazards.

AR at 18.

**E.      STEP FOUR**

At step four, the ALJ found Plaintiff was unable to perform any past relevant work as a kitchen helper, manager of fast food services, and fast food worker. AR at 21.

**F.      STEP FIVE**

At step five, the ALJ found that "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." AR at 22. With the assistance of the

---

[4] "Light work" is defined as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b); see also Aide R. v. Saul, 2020 WL 7773896, *2 n.6 (C.D. Cal. Dec. 30, 2020).

1  vocational expert's testimony, the ALJ found that Plaintiff would be able to perform
2  the representative occupations of hand packager (Dictionary of Occupational Titles
3  ["DOT"] 559.687-074), assembler, electrical accessories (DOT 729.687-010), and
4  small products assembler (DOT 706.684-022).  Id. at 22–23.  Accordingly, the ALJ
5  concluded Plaintiff "has not been under a disability, as defined in the Social Security,
6  since January 27, 2021, the date the application was filed[.]"  Id. at 23.

7                                    **V.**
8                        **PLAINTIFF'S CLAIMS**

9        Plaintiff presents the following two disputed issues:  (1) the ALJ failed to
10  provide specific, clear, and convincing reasons for discounting Plaintiff's allegations of
11  right upper extremity pain and dysfunction; and (2) the ALJ's determination that
12  Plaintiff could engage in unlimited reaching with his right upper extremity, other than
13  overhead reaching, was not supported by substantial evidence.  See Pl's Brief at 2–12;
14  Pl's Reply at 2–5.[5]

15                                   **VI.**
16                        **STANDARD OF REVIEW**

17        Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's
18  decision to deny benefits.  The ALJ's findings and decision should be upheld if they
19  are free of legal error and supported by substantial evidence based on the record as a
20  whole.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742,
21  746 (9th Cir. 2007).

22        "Substantial evidence" is evidence that a reasonable person might accept as
23  adequate to support a conclusion.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th
24  Cir. 2007) (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  It
25  is more than a scintilla but less than a preponderance.  Id.  To determine whether
26  substantial evidence supports a finding, the reviewing court "must review the

27  _____
28  [5] The page numbers from the parties' pleadings cited in this Memorandum and Order were
    generated automatically by the Court's ECF filing system.

1  administrative record as a whole, weighing both the evidence that supports and the

2  evidence that detracts from the Commissioner's conclusion." <u>Reddick</u>, 157 F.3d at

3  720; <u>see also</u> <u>Hill v. Astrue</u>, 698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court

4  . . . may not affirm simply by isolating a 'specific quantum of supporting evidence.'")

5  (quoting <u>Robbins</u>, 466 F.3d at 882). "If the evidence can reasonably support either

6  affirming or reversing," the reviewing court "may not substitute its judgment" for that

7  of the Commissioner. <u>Reddick</u>, 157 F.3d at 720–21; <u>see also</u> <u>Molina v. Astrue</u>, 674

8  F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than

9  one rational interpretation, we must uphold the ALJ's findings if they are supported

10  by inferences reasonably drawn from the record."), <u>superseded by regulation on other</u>

11  <u>grounds as stated in</u> <u>Smith v. Kijakazi</u>, 14 F.4th 1108, 1111 (9th Cir. 2021).

12      The reviewing court may review only the reasons stated by the ALJ in her

13  decision "and may not affirm the ALJ on a ground upon which [s]he did not rely."

14  <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only

15  be considered harmless if it is "clear from the record" that the error was

16  "inconsequential to the ultimate nondisability determination." <u>Robbins</u>, 466 F.3d at

17  885 (citation omitted).

18                              **VII.**

19                          <u>**DISCUSSION**</u>

20  **A.    THE ALJ FAILED TO PROVIDE SUFFICIENT REASONS FOR**

21        **DISCOUNTING PLAINTIFF'S SUBJECTIVE COMPLAINTS[6]**

22        **1.    Plaintiff's subjective complaints**

23              **(a)    Exertional Questionnaire**

24        On March 6, 2021, in support of his claim for disability, Plaintiff submitted a 3-

25  page Exertional Questionnaire. AR at 304–06. He stated that constant pain in his

26

27  _____
   [6] Because Plaintiff is challenging the ALJ's discounting of Plaintiff's subjective complaints regarding

28  his "right upper extremity pain and dysfunction," the Court will focus on Plaintiff's subjective
   complaints related to the use of his right upper extremity.

                              7

shoulder and the lack of range of motion in his arm prevents him from carrying out his normal workday. Id. at 304, 306. He is able to lift only "small things." Id. at 305. He is able to shower and clean but feels weak. Id. at 304. He cleans his own home. Id. at 305. He does not grocery shop, drive, or do yard work. Id. He was able to do these chores before he became disabled. Id. at 306. He stays at home and does not go out unless he has an appointment. Id. at 304. He sleeps 6 to 8 hours, and requires rest periods or naps during the day. Id. at 306. He takes Benadryl for sleep and Norco for pain. Id. He uses a brace when his arm is sore. Id.

### (b)    February 15, 2022 administrative hearing

At the hearing, Plaintiff testified that he lives in a house with his two children ages 15 and 13. Id. at 33. He does not have, and has never had, a driver's license. Id. at 33–34. Although he has applied for work since his March 2020 bicycle accident, he has not been able to work because of his injuries ("there's nothing I can do"). Id. at 41, 47. He cannot lift his right arm over his chest. Id. at 41. His right hand has a tingly sensation. Id. He can do a dead lift with his right hand, but he cannot carry or move anything around with his right hand due to an absence of range. Id. at 42–43.

On a typical day, he gets up, eats, showers, and does as much as he can. Id. at 44. He does not have any mobility on his right side. Id. at 44, 47. When asked if he has talked to his doctor about his lack of mobility, he said he has "appointments coming up." Id. at 47. He can shower (maybe once a week) and get dressed (including socks) on his own, but it is time consuming because he only can use one hand. Id. at 44, 47. He is able to cook meals in in a microwave. Id. at 44. He does laundry once a week. Id. Other than mild dusting, he is not able to do much cleaning around the house. Id. He cannot reach things in high places. Id. He is not able to mow the lawn. Id. He does not grocery shop or take out the groceries; his children have to do everything for him. Id. at 45, 47.

For pain, he takes ibuprofen, Tylenol, Aleve (once a day), and "whatever [he] can get [his] hands on." Id. at 45–46. He had a prescription for Norco, but that was

1  discontinued.  Id. at 45.  He takes non-prescribed substances, including marijuana and

2  PCP (once a month).  Id. at 45–46.

3        **2.**      **The ALJ 's decision**

4        The ALJ's summary of Plaintiff's subjective complaints related to his right

5  upper extremity is as follows:

6
7        The claimant alleged that he is disabled due to the resulting
     symptoms of his impairments.  Based on his disability report, he alleged
8       to having right shoulder surgery complication (wrong hardware installed),
     severe pain due to broken ankle, left hip reconstruction complication,
9       causing constant pain, pain due to broken left knee, stomach issues, and
     high blood pressure ([AR at 265 and 296]; *see also* [AR at 336]).
10

11       At the hearing, the claimant testified that [he] did not look for work
     after his accident due to his loss of range of motion in the right arm
12      beyond chest level and tingling in his right hand. . . .  The claimant noted
     that he is able to lift with his left arm "ok" but is unable to do much with
13      his right arm. . . .  The claimant indicated that on a typical day, he manages
     his personal care and takes a long time showering with one hand since his
14      mobility is limited.  The claimant noted that he is able to do very little
     household chores, prepare microwave meals, and do laundry once a week,
15      while his family does the grocery shopping for him.  The claimant stated
     that he uses marijuana and sometimes PCP, namely once a month, but
16      otherwise takes Tylenol or Aleve for his pain, further noting that he is not
     longer allowed to take Norco (Hearing Testimony).
17

18

19

20 Id. at 19.

21       The ALJ found that, although Plaintiff's medically determinable impairments

22 could reasonably be expected to cause the alleged symptoms, his statements

23 "concerning the intensity, persistence[,] and limiting effects of [the] symptoms" were

24 "not entirely consistent with the medical evidence and other evidence in the record

25 for the reasons explained in this decision."  Id.  The ALJ then stated that "despite his

26 allegations of pain and limited functioning, the objective medical findings in the

27 record revealed largely unremarkable findings and symptoms that were otherwise

28 reasonably controlled with conservative treatment modalities, as discussed below."

1 | Id. at 20. The ALJ, therefore, discounted Plaintiff's subjective complaints for two
2 | reasons: (1) lack of supporting medical evidence; and (2) conservative treatment. Id.[7]

3 | ### 2. Applicable law[8]

4 | When a claimant produces objective medical evidence of an impairment that
5 | could reasonably be expected to produce the pain or other symptoms alleged, absent
6 | evidence of malingering, "the ALJ may reject the claimant's testimony about the
7 | severity of those symptoms only by providing specific, clear, and convincing reasons
8 | for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and
9 | internal quotation marks omitted); Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir.
10 | 2014); Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). "The ALJ must state
11 | specifically which symptom testimony is [discounted] and what facts in the record
12 | lead to that conclusion." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); see
13 | also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) ("A finding that a
14 | claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing
15 | court to conclude the adjudicator rejected the claimant's testimony on permissible

16 | _____

17 | [7] The Commissioner posits one more reason purportedly supporting the ALJ's discounting of Plaintiff's subjective complaints, namely, his failure to follow the proscribed post-surgery treatment
18 | of physical therapy. Def's Motion at 4–5. While the ALJ noted Plaintiff's admission in November 2020 that he did not go to physical therapy after his April 2020 right shoulder surgery (AR at 20, citing id. at 383) as well as Plaintiff's referral to physical therapy in October 2021 to improve his
19 | right shoulder range of motion (id. at 20, citing id. at 505), the ALJ did not specifically reject Plaintiff's testimony about the limiting effects of his right upper extremity impairment based on his
20 | failure to go to physical therapy. See id. at 20. Therefore, the Court will not review that reason. See Burrell, 775 F.3d at 1138; Orn, 495 F.3d at 630.

21 | [8] Before the ALJ's decision, Social Security Ruling ("SSR") 16-3p went into effect. See SSR 16-3p,
22 | 2017 WL 5180304. SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. at *2. Moreover, "[i]n
23 | doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d
24 | 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's
25 | overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or
26 | she is a truthful person." SSR 16-3p, 2017 WL 5180304, at *11. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-symptom evaluation "does not, however, alter the
27 | standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony." Elizabeth B. v. Comm'r Soc. Sec., 2020 WL 1041498, at *3 (W.D. Wash. Mar. 4, 2020); see also R.P.
28 | v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016) (SSR 16-3p "implemented a change in dictation rather than substance").

1    grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'")

2    (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-46 (9th Cir. 1991).

3            "If the ALJ's . . . finding is supported by substantial evidence, [a court] may not

4    engage in second-guessing."  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002);

5    <u>see also</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).  However, an ALJ's

6    failure to give specific, clear, and convincing reasons to reject the claimant's testimony

7    regarding the severity of the symptoms is not harmless, because it precludes the Court

8    from conducting a meaningful review of the ALJ's reasoning.  <u>Brown-Hunter</u>, 806

9    F.3d at 489.  Moreover, as mentioned, a court must "review only the reasons provided

10   by the ALJ in the disability determination and may not affirm the ALJ on a ground

11   upon which he did not rely."  <u>Orn</u>, 495 F.3d at 630.  Courts, therefore, may not

12   speculate as to the basis for unexplained conclusions but, rather, must only consider

13   the reasoning actually given by the ALJ.  <u>See</u> <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1138

14   (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts . . . [and]

15   may not take a general finding . . . and comb the [AR] to find specific conflicts.")

16   (citation omitted).

17           Finally, even if an ALJ errs in assessing subjective complaints, the decision will

18   be affirmed where such error is harmless, that is, if it is "inconsequential to the

19   ultimate nondisability determination," or if "the agency's path may reasonably be

20   discerned, even if the agency explains its decision with less than ideal clarity."  <u>Brown-

21   Hunter</u>, 806 F.3d at 492 (citation omitted); <u>Smith</u>, 14 F.4th at 1111 (even where the

22   "modest burden" of the substantial evidence standard is not met, "we will not reverse

23   an ALJ's decision where the error was harmless").  In that regard, the ALJ's finding

24   may be upheld even if not all the ALJ's reasons for rejecting the claimant's testimony

25   are valid.  <u>See Bray v. Comm'r Soc. Sec. Admin.</u>, 554 F.3d 1219, 1227 (9th Cir. 2009);

26   <u>Batson v. Comm'r Soc. Sec. Admin.</u>, 359 F.3d 1190, 1197 (9th Cir. 2004).

27   ///

28   ///

**3.**   **Analysis**

      **(a)**   **Conservative treatment**

      The ALJ discounted Plaintiff's subjective testimony in part because his "symptoms that were otherwise reasonably controlled with conservative treatment modalities." AR at 20.

      As the ALJ noted, on November 17, 2020, Plaintiff admitted that he did not go to physical therapy after his April 10, 2020 right shoulder surgery (open reduction internal fixation right proximal humerus fracture with the placement of hardware, id. at 366, 418–20). Id. at 384; see also id. at 375, 380 (treatment notes dated September 22, 2020 and November 6, 2020 indicate that Plaintiff was "not going to his physical therapy appointments"). The ALJ further noted that, in October 2021, Plaintiff was recommended only physical therapy to improve his right shoulder range of motion. Id. at 505.

      Although evidence of conservative treatment may be used as a basis to discount a claimant's symptom testimony, see Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)); see also Jiminez v. Colvin, 2013 WL 3200523, at *5 (C.D. Cal. June 24, 2013) ("Infrequent, conservative treatment is not indicative of a disabling impairment."), here, the record does not reflect that Plaintiff received conservative treatment for his symptoms post-right shoulder surgery or that conservative treatment "reasonably controlled" Plaintiff's symptoms post-right shoulder surgery.

      Two weeks after the surgery, Plaintiff's pain was only "mildly improved" and Plaintiff was prescribed Norco, an opioid. Id. at 371–72. In September 2020: (1) Plaintiff reported that he had "constant dull pain" (rated 8 out of 10) and "loss of range of motion" in his right shoulder, that he could not perform certain daily activities (toilet hygiene and writing), and that Aleve did not help his pain; (2)

examination revealed right shoulder tenderness and decreased range of motion; and (3) an X-ray showed "one screw beyond the cortex into the glenohumeral joint." Id. at 375–77.  On November 6, 2020: (1) Plaintiff reported that he had "constant dull pain" (rated 9 out of 10) and "loss of range of motion" in his right shoulder; (2) examination revealed decreased range of motion; (3) a CT scan showed that "2 screw tips appear to enter glenohumeral joint"; and (4) the examiner noted that Motrin, Norco, and Aleve had not helped Plaintiff's pain and that Plaintiff was being referred to pain management.  Id. at 379–81.  On November 17, 2020: (1) Plaintiff reported that he had a "constant dull pain" (rated 8 out of 10) and "loss of range of motion" in his right shoulder; (2) examination revealed that Plaintiff experienced pain with right shoulder movement (abduction, extension, adduction, internal rotation, and external rotation); and (3) the examiner noted that hardware removal was discussed with Plaintiff, but there was no guarantee the procedure would resolve all of his pain.  Id. at 383–85.  On January 5, 2021: (1) Plaintiff reported that he had "significant" stiffness and pain (rated 8 out of 10) in his right shoulder; (2) examination revealed "[m]inimal active motion of the [right] shoulder due to pain and stiffness"; and (3) the examiner noted that "postoperatively he developed avascular necrosis of the humeral head and now has collapse with intra-articular hardware," that Plaintiff was interested in the surgery (hardware removal), that "X-rays and CT scans of the right shoulder show intact proximal humerus hardware with collapse of the humeral head and cut out of the screws," and that Plaintiff was told the procedure may not relieve all his pain, "it is possible that there are nonhealed fragments which may be free after removal of the hardware," and "further surgeries down the line for shoulder arthritis" would be likely.  Id. at 365–67.  Although surgery was scheduled for early January, the surgery could not take place due to Plaintiff's positive drug screen test (PCP and THC) and his being "late" for surgery.  Id. at 354, 388.

On January 29, 2021: (1) Plaintiff reported he was "continuing to have pain and very limited mobility of his right shoulder" and requested to reschedule the surgery;

13

(2) examination revealed reduced range of motion and pain with movement in the right shoulder; and (3) Plaintiff received a steroid injection in the right shoulder.  Id. at 387–90.  On March 6, 2021: (1) Plaintiff reported he was having continuing pain (rated 9 out of 10) and limited mobility in his right shoulder and requested the rescheduling of his surgery; (2) examination revealed reduced range of motion and pain with movement in the right shoulder; and (3) the examiner that Plaintiff would be rescheduled for surgery if he has two negative drug screen tests one month apart. Id. at 353–56.  On October 28, 2021, Plaintiff reported he had pain and "limited range of motion due to hardware," and requested "to be referred back to orthopedics for removal"; the examiner also noted that Plaintiff was "[a]greeable to starting physical therapy in the interim" and that he would benefit from physical therapy for improvement in range of motion.  Id. at 502-05.[9]

Here, while Plaintiff did not go to physical therapy after his April 2020 right shoulder surgery, and while Plaintiff in October 2021 was recommended physical therapy for improvement in his right shoulder range of motion, that does not mean his treatment was conservative.  Plaintiff not only had surgery on his right shoulder but Plaintiff also: (1) was prescribed narcotic pain medication (Norco); (2) was scheduled to have another surgery for the hardware removal (a surgery that might not relieve all his pain); (3) received a steroid injection; and (4) was told about "likely" later surgeries for his shoulder arthritis.  AR at 366-67, 371–72, 390, 418–20. Moreover, the more recently recommended physical therapy was an attempt to help him while he awaited a referral back to orthopedics for the hardware removal.  Id. at 503, 505.  Reviewing Plaintiff's treatment as a whole, it appears that Plaintiff's treatment for his right shoulder injury was not conservative.  See, e.g., Alexander C. v. Saul, 2020 WL 6321765, at *4 (C.D. Cal. Oct. 2, 2020) (spinal surgery, epidural

---

[9] There does not appear to be anything in the record, and the parties do not direct the Court to anything in the record, concerning whether Plaintiff attended physical therapy after October 28, 2021.

1   injections and narcotic pain medications is "far from conservative" treatment);

2   Christine G. v. Saul, 402 F. Supp. 3d 913, 926 (C.D. Cal. 2019) ("Many courts have

3   previously found that strong narcotic pain medications and spinal epidural injections

4   are not considered to be 'conservative' treatment."); Sanchez v. Colvin, 2013 WL

5   1319667, at *4 (C.D. Cal. Mar. 29, 2013) ("Surgery is not conservative treatment.").

6           Moreover, the ALJ has failed to state how Plaintiff's treatment, conservative or

7   otherwise, "reasonably controlled" Plaintiff's symptoms post-right shoulder surgery.

8   As discussed above, after the surgery, Plaintiff repeatedly complained of pain and

9   limited range of movement in the right shoulder, and examination repeatedly revealed

10  reduced range of motion in the right shoulder.  See AR at 353–56, 365–67, 371, 375–

11  77, 379–81, 383–85, 387–90, 502–04.  The medical record simply does not reflect that

12  Plaintiff responded well to treatment after surgery.  See Crane v. Shalala, 76 F.3d 251,

13  254 (9th Cir. 1996) (finding that "the evidence suggesting that [claimant] responds

14  well to treatment" supports an adverse credibility determination).

15          Therefore, the ALJ's reasoning that Plaintiff's subjective complaints were

16  "reasonably controlled with conservative treatment modalities" did not constitute a

17  "specific, clear, and convincing reason" for discounting his testimony.

18          **(b)   Lack of supporting objective medical evidence**

19          Although the ALJ gave a detailed summary of the medical evidence, the ALJ

20  did not specifically identify the inconsistencies between Plaintiff's subjective

21  complaints and the medical evidence.  AR at 20.  The ALJ stated that "the objective

22  medical findings in the record revealed largely unremarkable findings," but the ALJ

23  left it to the reader to draw inferences about how the evidence interacted with

24  Plaintiff's testimony.  Id.  Even if this court could reasonably infer inconsistencies

25  with Plaintiff's testimony from the ALJ's summary, such inferences cannot form the

26  basis for affirming the ALJ's decision.  See Brown-Hunter, 806 F.3d at 493-94

27  ("[I]nconsistencies identified independently by the district court cannot provide the

28

15

1    basis upon which we can affirm the ALJ's decision even where they are "reasonable

2    inferences").

3          Moreover, even if the ALJ had cited specific testimony and how the medical

4    evidence contradicted it, "lack of medical evidence cannot form the sole basis for

5    discounting pain testimony." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005);

6    Rollins, 261 F.3d at 856-57; Bunnell, 947 F.2d at 345.

7          Therefore, the ALJ's conclusion that Plaintiff's subjective complaints were not

8    entirely consistent with the objective medical evidence (see AR at 19–20) does not

9    constitute a "specific, clear, and convincing reason" for discounting Plaintiff's

10   subjective complaints.

11         In sum, the ALJ failed to provide sufficient reasons for discounting Plaintiff's

12   testimony about the limiting effects of his right upper extremity impairment.

13         **4.    Harmlessness**

14         The ALJ's error in rejecting Plaintiff's subjective complaints is not harmless.  A

15   decision of the ALJ will not be reversed for errors that are harmless. Stout v. Comm'r

16   of Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citing Burch, 400 F.3d at

17   679).  However, a reviewing court cannot consider an error harmless "unless it can

18   confidently conclude that no reasonable ALJ . . . could have reached a different

19   disability determination." Id. at 1056.  In other words, legal errors are harmless only if

20   they are inconsequential to the non-disability decision. Id. at 1055.

21         Here, the ALJ's determination that Plaintiff was not disabled necessarily relied

22   on the ALJ's rejecting of Plaintiff's allegations regarding the limiting effect of his

23   impairments.  Therefore, the Court was precluded from conducting a meaningful

24   review of the ALJ's reasoning, and the Court cannot conclude that the ALJ's

25   improper analysis of Plaintiff's subjective complaints was harmless error. See Brown-

26   Hunter, 806 F.3d at 492-93 (ALJ's failure adequately to specify reasons for

27   discounting claimant testimony "will usually not be harmless").

28   ///

## VIII.

## RELIEF

### A.   APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Hill, 698 F.3d at 1162 (citation omitted).  "We may exercise our discretion and direct an award of benefits 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.'" Id. (citation omitted).  "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id.; see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

### B.   ANALYSIS

Here, Plaintiff does not request immediate award of benefits, but a remand for further proceedings.  Pl's Brief at 10.  Moreover, the ALJ's assessment of Plaintiff's subjective complaints about his symptoms and limitations resulting from his right shoulder impairment is intertwined with the consideration of medical evidence and ultimately the fashioning of the RFC.  Because it is unclear, considering these issues, whether Plaintiff was in fact disabled, remand here is on an "open record."  See Brown-Hunter, 806 F.3d at 495-46; Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

The parties may freely take up all issues raised in the parties' pleadings, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.  See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for

17

remand."); <u>Augustine ex rel. Ramirez v. Astrue</u>, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## IX.

## <u>CONCLUSION</u>

For the foregoing reasons, **IT IS ORDERED** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this action for further proceedings consistent with this Memorandum and Order.

Dated:  August 16, 2023

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

18